**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SMITHKLINE BEECHAM CORPORATION, | : | |
| SMITHKLINE BEECHAM, p.l.c., and | : | **CIVIL ACTION** |
| BEECHAM GROUP, p.l.c., | : | **NO. 99-CV-4304** |
| v. | : | **NO. 00-CV-4888** |
| APOTEX CORPORATION, APOTEX, INC., | : | **NO. 01-CV-0159** |
| and TORPHARM, INC., | : | **NO. 01-CV-2169** |
| v. | : | |
| SMITHKLINE BEECHAM CORPORATION, | : | **Judge R. Barclay Surrick** |
| SMITHKLINE BEECHAM, p.l.c., | : | |
| BEECHAM GROUP, p.l.c., | : | |
| GLAXOSMITHKLINE p.l.c., | : | |
| PENTECH PHARMACEUTICALS, INC., | : | |
| and PAR PHARMACEUTICAL, INC., | : | |
| SMITHKLINE BEECHAM CORPORATION, | : | |
| SMITHKLINE BEECHAM, p.l.c. and, | : | CIVIL ACTION |
| BEECHAM GROUP, p.l.c., | : | NO. 99-CV-2926 |
| v. | : | NO. 00-CV-5953 |
| GENEVA PHARMACEUTICALS, INC. and | : | NO. 02-CV-1484 |
| SUMIKA FINE CHEMICALS CO., LTD. | : | |
| SMITHKLINE BEECHAM CORPORATION, | : | |
| SMITHKLINE BEECHAM, p.l.c., and | : | CIVIL ACTION |
| BEECHAM GROUP, p.l.c., | : | NO. 00-CV-1393 |
| v. | : | NO. 00-CV-6464 |
| ZENITH GOLDLINE PHARMACEUTICALS, | : | NO. 01-CV-2602 |
| INC. and SUMIKA FINE CHEMICALS CO., LTD. | : | |
| SMITHKLINE BEECHAM CORPORATION, | : | |
| SMITHKLINE BEECHAM, p.l.c., and | : | CIVIL ACTION |
| BEECHAM GROUP, p.l.c., | : | NO. 01-CV-1027 |
| v. | : | NO. 01-CV-3364 |
| ALPHAPHARM PTY., LTD. and | : | NO. 02-CV-8493 |
| SUMIKA FINE CHEMICALS CO., LTD. | : | |
| SMITHKLINE BEECHAM CORPORATION and | : | |
| BEECHAM GROUP, p.l.c., | : | CIVIL ACTION |
| v. | : | NO. 01-CV-2981 |
| ANDRX PHARMACEUTICALS, INC., | : | |
| ANDRX PHARMACEUTICALS, L.L.C., | : | |
| BASF CORPORATION, | : | |
| BASF PHARMACHEMIKALIEN GMBH & CO. | : | |
| KG, and KNOLL AG. | : | |
| SMITHKLINE BEECHAM CORPORATION, | : | |
| SMITHKLINE BEECHAM, P.L.C. and | : | CIVIL ACTION |
| BEECHAM GROUP, p.l.c., | : | NO. 03-3365 |
| v. | : | |
| TEVA PHARMACEUTICALS USA, INC. | : | |

# GSK'S MEMORANDUM
# IN OPPOSITION TO TORPHARM'S
# MOTION TO COMPEL GSK TO PRODUCE DOCUMENTS

## INTRODUCTION

Torpharm's "Motion to Compel SmithKline to Produce Documents" seeks an order compelling the production of three categories of documents: (1) documents related to the activities of certain "committees" and internal operating groups regarding Paxil (requests 490-505); (2) submissions to *foreign* pharmacopoeias (effectively, organizations that publish specifications for various pharmaceutical products) related to Paxil (requests 506-08); and (3) documents related to a settlement agreement between GSK and Par Pharmaceuticals (requests 536-39, 554-555, 557-63, 566-67), which this Court has already ruled increased competition and cannot give rise to antitrust injury. Torpharm's Motion should be denied as described below.

First, with respect to the "committee" documents sought by Torpharm's requests 490-505, Torpharm's claim that GSK has refused to produce these documents -- the very premise of its Motion regarding this category of documents -- was simply false. GSK never refused to produce the documents called for by these requests. To the contrary, prior to Torpharm's Motion, GSK had already produced hundreds of responsive documents related to the activities of the identified "committees" regarding Paxil. Moreover, pursuant to the parties' discovery negotiations, Torpharm was to review GSK's production and contact GSK regarding any alleged gaps in production. Instead, it filed this Motion *without contacting GSK regarding any alleged gaps or attempting to meet and confer to resolve any disputes* as required by Local Rule 26.1(f). In any event, after the Motion was filed, *GSK* suggested that the parties follow the agreed upon process and initiated a meet and confer. As a result, GSK agreed to confirm whether or not additional responsive documents exist that have not already been produced -- a

2

step GSK would have been willing to agree to if Torpharm had followed the parties' agreed upon process before filing the Motion.  As a result of GSK's agreement, the parties have agreed that Torpharm's Motion on this point is moot.

Second, GSK's communications with the British and European Pharmacopoeias (the "BP" and the "EP", respectively) covered by Torpharm's requests 506-08 are of, at most, limited relevance in this action.  GSK has already produced documents related to communications regarding paroxetine (the active ingredient in Paxil) with the United States Pharmacopoeia ("USP") and its submissions regarding paroxetine to the BP and EP to the extent that such submissions related to the melting point of paroxetine hydrochloride anhydrate (the melting point is an issue in the patent litigation involving the '423 "Form A" patent).  Torpharm has now raised an entirely new basis for broad discovery into GSK's submissions to the BP and EP -- a purported need to discover whether or not GSK submitted to the foreign pharmacopoeia analytical testing data in addition to that related to melting point.  (Mot. at 12.)

GSK, however, has already produced the USP submission, which would contain the same analytical data that Torpharm argues is the basis for seeking the EP and BP submissions.  Similarly, Torpharm's argument that documents related to foreign pharmacopoeia are relevant to its antitrust counterclaims makes no sense --its counterclaims are based on an alleged effort to monopolize a United States market.  Consequently, and for the reasons stated below, GSK respectfully requests that this Court deny the Motion to the extent it seeks documents related to the foreign pharmacopoeia.

Third, with respect to the Par Agreement, this Court has found that it increased competition and could not have caused Torpharm antitrust injury.  See SKB v. Apotex, 2004 WL

3

2222388 (E.D. Pa.). Nevertheless, GSK recognizes that this Court held that the Par Agreement might still have limited relevance as part of an alleged "scheme" to monopolize. Consequently, GSK informed Torpharm that it was willing to produce certain documents related to the Par Agreement so long as Torpharm narrowed its broad requests consistent with this Court's ruling. Torpharm refused to do so.

In any event, any documents related to the alleged role of the Par Agreement in some type of scheme to monopolize -- i.e., documents discussing the agreement's effect on generic competition or Torpharm's ability to enter -- would be covered by other requests to which GSK has agreed to respond. In short, there are no relevant Par Agreement documents that GSK has refused to produce. Consequently, GSK respectfully requests that Torpharm's Motion be denied to the extent it seeks documents related to the Par Agreement.

## **ARGUMENT**

I. **TORPHARM'S MOTION AS IT RELATES TO DOCUMENT REQUESTS NOS. 490-505 (RELATING TO "COMMITTEE" DOCUMENTS) IS MOOT**

Torpharm's Requests 490-505 seek documents and information related to a variety of specific GSK committees and internal operating groups. Although Torpharm asserts that GSK "refused" to produce documents called for by these requests (Motion at 3), that assertion is simply not true. To the contrary, when Torpharm served Requests 490-505 on GSK in April, 2004, GSK explained that its search for documents called for by the numerous other requests served by Torpharm -- it has now served over 600 document requests -- would include documents responsive to Requests 490-505. (See Ltr. fr. Gordon to Wolfinger, Ex. D. to Motion, confirming that "GSK agrees that its position is that the documents otherwise responsive to these requests will be among the documents it has agreed to produce in response to TorPharm's other

document requests.") Consistent with GSK's expectation, GSK's production -- which already includes over one million pages of documents -- contains numerous responsive documents, including meeting minutes, meeting agenda, organizational charts and documents reflecting strategic discussions.[1]

In response to GSK's position regarding these requests, Torpharm agreed to review GSK's production and identify any perceived gaps. (See Mot. at 9.) Instead, Torpharm filed this Motion without even contacting GSK's counsel about the specific issues it raises here. When it received Torpharm's Motion, GSK initiated the discussions contemplated by the parties' earlier understanding and, as a result, agreed to confirm whether or not there are any documents responsive to these requests that have not yet been produced. Consequently, the parties have agreed that Torpharm's Motion with respect to Requests 490-505 is moot.[2]

---

[1]   See June 21, 2005 Letter from Gordon to Gaertner at pages 1-3, attached as Ex. A hereto. GSK has also produced all of the sworn testimony of its employees from the FTC investigational hearings regarding Paxil, much of which related to the activities of these committees and operating groups. In addition, Torpharm extensively questioned GSK employee Anne Bell about the activities of the Paxil Project Team, showing Ms. Bell numerous Project team documents and minutes in the process.

[2]   Torpharm also attacks the sufficiency of written descriptions of the various committees and internal operating groups provided, on a voluntary basis, by GSK. (Ex. H to Torpharm Motion.) GSK's descriptions of these groups, and its identification of participating members, was based on the best information available, including a review of sworn deposition testimony from relevant individuals with knowledge of the various groups and their functions, internal contemporaneous documents and discussions with GSK personnel. It was *not* based solely on a review of deposition testimony, as suggested by Torpharm (although sworn deposition testimony from knowledgeable individuals is certainly a credible and acceptable source of information). On June 6, 2005, GSK supplemented its original descriptions with similar information regarding additional committees and operating groups. (Ex. B hereto.) This supplemental information also included specific deposition citations, the names of persons with knowledge, and citations to previously produced documents.

II.   **GSK HAS PRODUCED THE PHARMACOPOEIA DOCUMENTS THAT ARE RELEVANT TO THIS LITIGATION**

Torpharm's Requests 506-08 seek "all documents" related to GSK's submissions to various pharmacopoeias, including the USP, BP and EP, related to paroxetine hydrochloride. GSK agreed to produce 1) its communications with the USP[3] regarding paroxetine and documents discussing such submissions; and 2) its communications with the BP and EP relating to the melting point of paroxetine hydrochloride and/or the methods for testing melting point (which Torpharm had suggested during negotiations might be relevant to its patent infringement defenses). GSK has completed this production, mooting any issue regarding the production of documents related to the USP or communications with the BP and EP regarding the melting point of paroxetine. (Again, Torpharm failed to meet and confer with GSK regarding this aspect of Motion and could have avoided this issue entirely had it done so.)

Consequently, the only pharmacopoeia-related issue remaining is whether or not GSK should be compelled to produce *all* of its documents regarding communications with the BP and EP about paroxetine. Torpharm advances two arguments for the production of such documents: (1) that they might be relevant to an alleged scheme to monopolize a "market" for paroxetine in the United States; and (2) that they might be relevant to Torpharm's patent infringement defenses.

---

[3]   By agreeing to produce these documents, GSK is not conceding that its submissions to the USP are relevant in this case. Torpharm suggests that GSK violated the antitrust laws by allegedly petitioning the USP to set standards in such a way as to deter or exclude generic competition for Paxil. (Motion at 10.) Such petitioning, however, is immune from antitrust scrutiny under the Noerr-Pennington doctrine. See In re Warfarin Sodium Antitrust Litigation, 1998 WL 883469 at *8 (D.Del. 1998) (applying the Noerr-Pennington doctrine to dismiss antitrust claims based on petitioning communications with USP). The same should be true for petitioning of the BP and EP.

With respect to the first argument regarding an alleged scheme to monopolize, Torpharm's counterclaims contain no allegations regarding GSK's submissions to the USP or foreign pharmacopoeia.  Moreover, Torpharm makes no effort to explain how submissions to *foreign* pharmacopoeia might be relevant to an alleged "scheme" to monopolize a market by delaying generic entry in the *United States*.  Even if Torpharm had pleaded such a "scheme," it would be the documents submitted to the USP that would be potentially relevant -- and GSK produced those documents.  Specifications set by the foreign pharmacopoeia have no bearing on a domestic market or on the ability of generic manufacturers to enter that market.  Therefore, foreign pharmacopoeia documents are not likely to lead to admissible evidence in connection with Torpharm's counterclaims.[4]

With respect to Torpharm's infringement defenses, when the parties were negotiating the scope of Torpharm's document requests, it argued that the submissions to the EP or BP might contain representations regarding the melting point of paroxetine hydrochloride and the relationship between DSC testing and melting point.  (Ex. C. to Motion.)  GSK considered Torpharm's argument and agreed to produce its communications with the BP and EP relating to the melting point of paroxetine hydrochloride and/or the methods for testing melting point.  Now, *for the first time in its Motion*, Torpharm argues that it needs to discover whether or not specific data from a variety of analytical tests in addition to that related to melting point were

---

[4]    The cases cited by Torpharm have nothing to do with the discovery of foreign pharmacopoeia documents. (Motion at 12.)  Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985), does not involve a standard setting body or any discovery-related issue.  Rambus, Inc. v. Infineon Technologies A.G., 330 F.Supp.2d 679, 697 (E.D.Va. 2004) is equally inapplicable to the discoverability of foreign pharmacopoeia documents.  That case relates to a U.S. standard setting organization, This decision has no applicability to the discovery of  documents submitted to foreign pharmacopoeia organization in a case alleging the monopolization of a U.S. market.

submitted by GSK to the foreign pharmacopoeia.  (Mot. at 12.)  Torpharm never raised this

wider array of analytical testing data with GSK during the parties' discovery negotiations, but

rather waited instead to raise them -- almost as an afterthought -- in this Motion for the first time.

This instance is another example of Torpharm's consistent refusal to follow the

procedures requiring parties to make reasonable efforts to resolve disputes prior to filing a

motion.  The practice of raising an entirely new basis for requested discovery the first time in a

Motion without giving the other party a chance to consider the point is not, by definition, a

reasonable effort to resolve the dispute.  In any event, to the extent it was submitted to a

pharmacopoeia, the analytical test data referred to in Torpharm's Motion would be in the USP

submissions, which GSK already produced.

For the reasons stated above, Torpharm's request for "all documents" related to

GSK's submissions to the EP and BP is unwarranted overreaching.  Consequently, GSK

respectfully requests that this Court deny the Motion to the extent that it seeks documents related

to the foreign pharmacopoeia.

III.  **TORPHARM'S REQUESTS FOR DOCUMENTS RELATED TO
      THE PAR AGREEMENT SHOULD BE NARROWED TO
      REFLECT THIS COURT'S SEPTEMBER 29, 2004 OPINION**

The final category of documents at issue in this Motion are documents relating to

the Par Agreement.  That agreement settled patent infringement litigation between GSK and

Pentech Pharmaceuticals, Par's joint venture partner, over certain of GSK's patents for Paxil.

See SKB v. Apotex, 2004 WL 2222388 (E.D. Pa. 2004).  GSK agreed to settle that infringement

litigation by granting Par a license to sell paroxetine upon the entry of another generic

competitor. Id. at *6 (discussing settlement agreement). Torpharm alleged that the Par

Agreement violated Sections 1 and 2 of the Sherman Act.

Torpharm has sought broad discovery into virtually every aspect of GSK's

agreement with Par. (See Ex. B to Motion, seeking, inter alia, "all documents concerning any

.... agreements" between or among" GSK and Par regarding paroxetine; (See generally Request

Nos. 536-539, 554, 555, 557-563, 566 and 567.) GSK objected to the Par-related requests, on

the grounds of relevance and overbreadth. GSK also objected on the grounds that the requests

were premature given its (at the time) pending motion to dismiss.

In ruling on that motion to dismiss, this Court dismissed Torpharm's claims under

Section 1 of the Sherman Act that were based solely upon the Par Agreement. Id. at *9. The

Court held that Torpharm could not maintain an antitrust action based upon the Par Agreement

because the agreement increased competition and caused no antitrust injury. Id. ("Such an

injury, resulting from increased competition, is not an antitrust injury.) The Court allowed the

Par Agreement to remain in the case to the extent that it was alleged to be part of a "scheme" by

GSK to monopolize a "market" for paroxetine hydrochloride. Id. at *13. Significantly, the

Court emphasized that Torpharm could recover no damages based upon the Par Agreement:

> [E]ven though we cannot dismiss Torpharm's monopolization and
> attempted monopolization claims against SmithKline to the extent
> they are based on the Settlement, Torpharm, assuming it proves its
> claims, will not be able to recover from SmithKline the profits it
> allegedly lost when it was denied the 'right' to be the first entity to
> market a generic form of Paxil. That is not an 'injury of the type
> the antitrust laws were intended to prevent....'

Id. at *13.

After the Court issued its September 29, 2004 opinion, GSK informed Torpharm

that it was "willing to consider reasonably narrowed discovery requests tailored to the Par

Agreement's limited relevance to TorPharm's remaining claims." (See Nov. 11, 2004 ltr. from Gordon to Wolfinger, Ex. F to Motion.) Torpharm refused. (Id.) Torpharm's position is that this Court's ruling on the Par Agreement should have no effect on discovery. That position is untenable. Given the fact that this Court held that the Par Agreement increased competition and caused no antitrust injury, it makes no sense for Torpharm to suggest that it should still be entitled to full and wide-ranging discovery regarding virtually every aspect of that agreement.

The fact is that any documents related to the alleged role of the Par Agreement in some "scheme" to monopolize -- i.e., documents discussing the agreement's effect on generic competition or Torpharm's ability to enter -- would be covered by other requests to which GSK has agreed to respond. Thus, there are no relevant documents that GSK has refused to produce or which would otherwise require an order compelling production. Consequently, GSK respectfully requests that this Court deny Torpharm's Motion to the extent that it seeks limitless discovery regarding the Par Agreement.

## CONCLUSION

For the foregoing reasons, the Motion should be denied as described above.

Respectfully submitted,

June 24, 2005

Joseph A. Tate, Esquire
George G. Gordon, Esquire
Kevin T. Kerns, Esquire
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793
(215) 994-4000
(215) 994-2222

Of Counsel:
Ford F. Farabow, Jr.
Richard B. Racine
Robert Bajefsky
Kenneth M. Frankel
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C.  20005-3315
(202) 408-4000

Arthur Makadon
Jamie B. Bischoff
Sally A. Steffen
BALLARD SPAHR ANDREWS &
    INGERSOLL
1735 Market Street
Philadelphia, PA  19103-7599
(215) 665-8500

11

## CERTIFICATE OF SERVICE

I, Kevin Kerns, hereby certify that on this date copies of the foregoing

Memorandum of Law in Opposition to TorPharm's Motion to Compel were served upon the

following counsel via ECF and first class mail:

Hugh H. Moore, Esquire
Keith D. Parr, Esquire
Michael J. Gaertner, Esquire
Scott B. Feder, Esquire
LORD, BISSELL & BROOK LLP
115 South LaSalle Street
Chicago, IL 60603
(312) 443–0700
(312) 443–0336 – Fax


Alan H. Bernstein, Esquire
Robert S. Silver, Esquire
Michael Berkowitz, Esquire
CAESAR RIVISE BERSTEIN COHEN & POKOTILOW LTD
1635 Market Street, 12th Floor
Seven Penn Center
Philadelphia, PA 19103
(215) 567–2010
(215) 751–1142 – Fax

Attorneys for Apotex Corp., Apotex, Inc. and Torpharm, Inc.

June 24, 2005

_____
Kevin T. Kerns

# EXHIBIT A

 **Dechert** LLP

George G. Gordon
Direct Tel: (215) 994-2382
Direct Fax: (215) 655-2382
george.gordon@dechert.com

June 21, 2005

**VIA FACSIMILE**

Michael J. Gaertner, Esquire
Lord Bissell & Brook LLP
115 S. LaSalle Street
Chicago, IL 60603-3901

Dear Mike:

I am writing to follow up on Travis' letter of June 1, 2005 and our telephone conversations of yesterday and today regarding Torpharm's motion to compel production of documents (the "Motion").

**Document Requests 490-505 ("committee" descriptions and documents)**

Travis' letter is correct that GSK's descriptions of the committees and internal working groups identified in these requests was reviewed and verified by internal GSK personnel as being accurate and complete, to the best of their knowledge at the time. GSK's descriptions were also based on deposition testimony of individuals with knowledge regarding the various committees and working groups, as well as GSK documents produced in discovery -- clearly appropriate sources for this information. In addition, Kevin Kerns' letter of June 6 supplemented the original descriptions with descriptions of the additional committees.

With respect to the adequacy of the descriptions, GSK disagrees with Torpharm's characterizations. GSK provided these descriptions on a voluntary basis to try to streamline the discovery process. They certainly provide Torpharm with a basic sense of the nature of each group's role regarding paroxetine and the identity of the relevant individuals involved in each group's activities regarding paroxetine. I further note that GSK's descriptions provide more detail than Torpharm's interrogatory answers identifying individuals with knowledge regarding its paroxetine product. In addition, Torpharm has had, and will have, an opportunity to question individuals regarding these committees during depositions. I refer you, for example, to Hugh Moore's examination of Anne Bell during her most recent deposition in December, 2004, during which he questioned her at length regarding various groups, including the Paxil Project Team.

In addition, GSK has provided numerous documents from these committees and internal working groups, including minutes and agendas that identify participants. By way of example, I refer you to the following documents:

- Post Patent Working Party: See e.g. documents produced at SBS02002-001547 - SBS02002-001599; SB02001-139662-001 - SB02001-139662-020;  SBS02002-000901 -

BOSTON

BRUSSELS

CHARLOTTE

FRANKFURT

HARRISBURG

HARTFORD

LONDON

LUXEMBOURG

MUNICH

NEW YORK

NEWPORT BEACH

PALO ALTO

PARIS

PHILADELPHIA

PRINCETON

SAN FRANCISCO

WASHINGTON

Michael J. Gaertner, Esquire
June 21, 2005
Page 2

> SBS02002-000901; SBG02001-031414 - SBG02001-
> 031432; SBS02001-003180 - SBS02001-003321;
> SB02001-400010 A66-108; SB03001-004674 A1-15;
> GSK00889906 - GSK00889917;
>
> - <u>Therapeutic Area Team (TAT)</u>: <u>See</u> <u>e.g.</u> GSK00856322 -
>   GSK00856322 GSK038651 - GSK038651; SB02001-
>   067169 - SB02001-067190; SB02001-139209-001 -
>   SB02001-139209-008; SB02001-140049 - SB02001-
>   140049); GSK00745009 - GSK00745009;
>
> - <u>Transnational Regulatory Affairs (TRA)</u>: <u>See</u> <u>e.g.</u>
>   SB02001-075779 - SB02001-075780; SB02001-144432 -
>   SB02001-144434; SB03001-003015 - SB03001-003016;
>   SB03001-004528 - SB03001-004528; SB06001-004639 -
>   SB06001-004675);
>
> - <u>Seroxat/Paxil Project Team</u>: <u>See</u> <u>e.g.</u> GSK00856305 -
>   GSK00856314; SBG02001-010712 - SBG02001-010901;
>   SBS02002-001547 - SBS02002-001599;  SBS11001-
>   003676 - SBS11001-003676; SKB17464-83;
>   GSK00745731 - GSK00745731 GSK00856315 -
>   GSK00856320; GSK00856354 - GSK00856357;
>
> - <u>Strategic Product Development (SPD)</u>: <u>See</u> <u>e.g.</u>
>   GSK00862233 - GSK00862265; GSK00864860 -
>   GSK00864953; GSK00896967 - GSK00896968;
>   GSK00896969 - GSK00896986; GSK002788 -
>   GSK002788; GSK00862848 - GSK00863053; GSK002061
>   - GSK002114; GSK026856 - GSK026917; GSK007898 -
>   GSK007913;
>
> - <u>Worldwide Technical Operations</u>: <u>See</u> <u>e.g.</u> SB02001-
>   147277-002 - SB02001-147277-003; SB02001-147725-
>   009 - SB02001-147725-010;  SB02001-147725-014 -
>   SB02001-147725-016; SB02001-148378-398 - SB02001-
>   148378-405; SB02001-400010-002 - SB02001-400010-
>   003;
>
> - <u>Compendial Standards Committee</u>: <u>See</u> <u>e.g.</u> SBS02001-
>   003824 - SBS02001-003874; SBS02001-005176 -
>   SBS02001-005182 SBS02002-001547 - SBS02002-
>   001599; GSK007898 - GSK007913;

Case 2:99-cv-04304-MMB   Document 190   Filed 06/24/05   Page 16 of 20

Michael J. Gaertner, Esquire
June 21, 2005
Page 3

- Pharmaceutical Management Committee: See e.g.
  SBG02001-031574 - SBG02001-031574 (meeting
  minutes); SBS02002-000902 - SBS02002-000902 ;
  SBS07001-000645 - SBS07001-000672.

In any event, GSK has agreed to confirm whether or not there are additional documents that
would be called for by these requests that have not been produced -- this will include
agendas and minutes reasonably sufficient to identify participants if not previously
produced. As I mentioned on your voice mail a couple of weeks ago, our goal is to
complete that process by June 30, 2005. Based on our discussion this morning, I
understand that this agreement moots the issues raised in Torpharm's recent Motion
regarding Document Requests 490-505.

**Documents concerning communications with the USP, BP and EP**

GSK has produced the submissions to the USP, as well as the submissions to the EP or BP
discussing melting points or testing methods as they related to the measurement of melting
point. Torpharm's recent Motion raises, for the first time, specific analytical testing data in
addition to those related to melting point data (this specific data was not raised during our
prior meet and confer, during which time the only specific data that Torpharm identified
were those related to melting point and DSC testing data as it related to melting point). I
informed you that GSK is investigating whether or not the EP or BP submissions contain
any analytical data not also contained in the USP submissions -- which Torpharm already
has.

**Documents concerning the Par Agreement**

To be clear, GSK has not refused to produce documents concerning the Par
Agreement. Rather, GSK requested that Torpharm be willing to "consider
reasonably narrowed discovery requests tailored to the Par Agreement's limited
relevance to TorPharm's remaining claims." (See Nov. 11, 2004 ltr. from Gordon
to Wolfinger.) GSK would be willing, for example, to produce documents related to
the Par Agreement that discuss, analyze or refer to the effect, if any, of the Par
Agreement on the ability of Torpharm or other generic suppliers to enter the alleged
market, if such documents exist. Such documents, if they exist, would likely be
covered by other requests to which GSK has agreed to respond (and documents
regarding the Par Agreement have been produced). Torpharm, however, has refused
to compromise on this point. Given the fact that this Court held that the Par
Agreement increased competition and caused no antitrust injury, it makes no sense
for Torpharm to suggest that it is entitled to full and wide-ranging discovery
regarding virtually every aspect of that agreement.

Please let me know if you have any questions or if you disagree with any of the above. I
hope this helps further define GSK's positions regarding Torpharm's Motion. You have
agreed that GSK's deadline for responding to Torpharm's Motion may be extended to

Dechert LLP

Michael J. Gaertner, Esquire
June 21, 2005
Page 4

Friday, June 24 to allow the parties a few additional days to clarify the issues that remain in dispute, if any.

Sincerely,

George G. Gordon

# EXHIBIT B

 **Dechert** LLP

Kevin T. Kerns
Direct Tel:  (215) 994-2729
Direct Fax:  (215) 655-2729
kevin.kerns@dechert.com

June 6, 2005

VIA FAX (312.896.6754)

Travis B. Wolfinger, Esquire
Lord Bissell & Brook LLP
115 S. LaSalle Street
Chicago, IL 60603-3901

Re: <u>SmithKline Beecham Corporation, et al. v. Apotex Corporation, et al.</u>

Dear Travis:

This letter responds to your April 12, 2005 request that GSK provide additional information with respect to certain GSK internal committees.

As an initial matter, as we advised you in our letter of March 16, 2005, the names of individuals who participated in the groups over the period of time covered by your document requests are not formally documented at GSK.  In addition, the purpose and composition of some of these groups may have been fluid and changed over time.  As a result, the best that GSK can do at this juncture is to rely on the best recollection of its employees as to the general purpose of the "committees" and their members.

### Pharmaceutical Management Committee (PMC)

The PMC was "the highest executive committee in the pharmaceutical part of the business" and was composed of "senior decision makers for the pharmaceutical side of SmithKline's business." (March 14, 2001 Deposition of Peter Lawton at 93).  The PMC "was an executive decision-making committee concerned with approving, or otherwise, investment decisions with respect to the corporation's commercial and development compounds at that time." (September 21, 2001 Deposition of Peter Lawton at 168).  Documents produced in this litigation identified members of the PMC as including: J. P. Garnier, I. Goethals, M. Greenacre, J. Hill, R.M. James, F. Kyle, J. Leschly, K. Mansford, W. Packer, G. Poste, W. Shaeffer, and J. Sime  (See GSK00407947- GSK00407949)

### Seroxat Paxil Project Team

With respect to the Project Team, we note that Apotex has already had the opportunity to extensively question Anne Bell at her December 17, 2004 deposition.

BOSTON

BRUSSELS

CHARLOTTE

FRANKFURT

HARRISBURG

HARTFORD

LONDON

LUXEMBOURG

MUNICH

NEW YORK

NEWPORT BEACH

PALO ALTO

PARIS

PHILADELPHIA

PRINCETON

SAN FRANCISCO

WASHINGTON

Travis B. Wolfinger, Esquire
June 6, 2005
Page 2

We note that Apotex already has numerous agendas and minutes of Project Team meetings about which Anne Bell was questioned. Anne Bell testified that she was the leader of "the global Project Team" and in that capacity was "responsible for making proposals to obtain funding to develop new indications or new product line extensions for those products all round the world." (December 17, 2004 Deposition of Anne Bell at 8). Bell testified that the funding proposals included funding for clinical investigations for other indications for the drug, improvement in pharmaceutical presentation of product (i.e. tablet, solution, etc.), and investigation of side effects. (December 17, 2004 Deposition of Anne Bell 8-9). Bell identified Charles Fake as the previous project leader. (December 17, 2004 Deposition of Anne Bell at 10). Bell identified members of the Project Team to include: Rajinder Judge, Hazel Leitch, Barry Zussman, Peter Lawton, Ian Tulloch, David Elder, Stephen Cooper, Robert Neal, Nigel Toesland, Hugh Crowley, Martina Dempsey, Nick Morton, Eduardo Bravo, Peter Baines, and Jill Hensley. (December 17, 2004 Deposition of Anne Bell 12-13; Bell Deposition Exhibit #1, SB 02001-139645, A19-A31. See also Bell Deposition Exhibits 2-6, 8, 10-13 with Bates numbers SB02001-139645 A1-18, SB02001-139776 A9-22, SBS11001-028159-61, SBS11001-003756-70, SBS11001-003614-41, SB02001-191213 A1-19, SKB 44194-96, SBS11001-026999-027001, SBS11001-026795-805, and SKB 04128-38, respectively, which refer to the Project Team.

**WTO/CSC Compendial Standards Committee**

WTO/CSC is an acronym for Worldwide Technical Operations/ Compendial Standards Committee. The WTO/CSC was responsible for overseeing issues related to technical specifications for chemical synthesis and manufacture of paroxetine and for developing monographs for drugs. We are in the process of identifying members of the committee, and will get back to you promptly with this information.

Please call me if you have any questions or concerns.

Sincerely,

Kevin T. Kerns

KTK/cl