IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SMITHKLINE BEECHAM CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| APOTEX CORPORATION, et al. | : | NO. 99-4304 |

**MEMORANDUM RE: IN CAMERA INSPECTION
OF GSK DOCUMENTS (DOC. NO. 413)**

**Baylson, J.**                                                                                         **December 15, 2009**

On November 17, 2009, Apotex Corporation ("Apotex") filed a Motion to Compel the Production, for In Camera Inspection, for Certain Documents from GSK's Withheld-Document Log (Doc. No. 413). This Motion reveals that it was prompted by the deposition testimony of Peter Lawton, a former Vice President with Plaintiff ("GSK"), which took place in the United Kingdom in September 2009. Apotex asserts that Lawton's deposition testimony shows that GSK may have submitted improper information to the U.S. Patent and Trademark Office, improperly listed patents in the Orange Book, hired intelligence gathering firms to gain confidential information, and violated the Protective Order in another case. For these reasons, Apotex requests that the Court require and conduct an <u>in camera</u> inspection of approximately 600 documents from GSK's log of privileged documents to determine whether the crime fraud exception should be applied and the privilege be deemed inapplicable.

A review of the Lawton deposition testimony shows that he did testify, in general terms, that GSK acted aggressively, and illegally, in protecting its rights as the licensee of a patent for Paxil, the drug which is the subject matter of this litigation. Before leaving GSK and becoming hostile to GSK, Lawton held the position of Vice President and had substantial responsibilities for Paxil and was in a position to know facts supporting his accusations.

On December 1, 2009, GSK filed its response (Doc. No. 429) which asserts that Lawton is a liar, who has admitted perjury and has not substantiated any requirement for GSK to produce its privilege documents in camera. Just as Apotex attaches certain portions of Lawton's transcript to support its accusations, GSK attaches other portions and certain documents supporting its attacks on Lawton and asking the Court to refrain from any drastic invasion of GKS's privilege by such unsubstantiated and perjured testimony.

Inasmuch as Lawton resides in the United Kingdom, the Court cannot call him as a witness and make an independent assessment of his credibility. The task of reviewing 600 allegedly privileged documents in camera is not to be undertaken lightly, and if undertaken at all, must be done on a thorough basis. Nonetheless, the Apotex allegations are serious, but whether the fundamentals of the crime fraud exception to the privilege have been proven on a prima facie basis, is difficult to determine without reviewing the documents.

The Court believes the appropriate way to approach this is for Apotex to select, from the voluminous privilege log which is attached to its Motion, thirty documents (5% of the total) that it believes are most likely to substantiate its claims that GSK's assertion of the attorney-client privilege should be denied because of the crime fraud exception. The Court will review those documents on a "sampling" basis. It is understood that Apotex may be "stabbing in the dark" but the sampling technique is appropriate in a case of this nature, and the Court believes that the voluminous discovery that has taken place over many years in this case, of which counsel knows the details much more than the Court could ever hope to learn, allows Apotex to intelligently designate the thirty documents, recognizing that there is some risk of omission.

If the Court concludes, after examining this sample of thirty documents in camera, that

further inquiry is appropriate, it is likely that the Court would appoint a master to conduct this inquiry, which would take a number of weeks to complete for the actual examination by the master, a report to the Court, and an opportunity for exceptions by the parties pursuant to Rule 53 F. R. Civ. P. If the result is unfavorable to Apotex, it is likely that the Court would tax the entire cost of the master against Apotex, and possibly all or part of GSK's attorneys fees in responding to Apotex's Motion.

The Court is prepared to examine the thirty documents before the hearing scheduled for December 21, 2009, if Apotex can make its designations forthwith on receipt of this Order. GSK shall supply those thirty documents to the Court no later than 12:00 p.m. on December 18, 2009.

In its submission, GSK may supply, ex parte, a letter to the Court explaining any matters within those documents which the Court may not appreciate or which will further educate the Court as to the context. This letter may not be more than ten pages double-spaced.

The Court is also considering requiring GSK to submit, for <u>in camera</u> review, any documents which its attorneys have placed on a privilege log and which reveal prima facie evidence of criminal conduct by Mr. Lawton or any person acting on behalf of GSK, whether authorized or not. The Court tentatively views this as an appropriate requirement of self disclosure that will enable the Court to consider the allegations of Apotex in the context of the overall record of the case, and whether the attorney-client privilege should give way to evidence of criminal conduct.

BY THE COURT:

s/Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL\SmithKline\SmithKline - Memo Compel GSK Withheld Doc Log.wpd